## J. C. LA RUE v. THE STATE.

No. 23489. Delivered November 27, 1946.

The opinion states the case.

*Pevehouse & McCall,* of Corsicana, for appellant.

*Ernest S. Goens,* State's Attorney, of Austin, for the State.

GRAVES, Judge.

Appellant was convicted of the murder without malice of W. J. Shockey, his father-in-law, and was awarded a sentence of three years in the State prison.

The facts evidence a drinking party of practically all of Saturday night and into the morning of Sunday, March 17, 1946. Appellant, who lived in Ennis, Texas, obtained a case of beer and two quart bottles of whisky, and with a friend furnishing the car he, his wife and members of his family, drove over to Corsicana, in a neighboring county, contacted his wife's kinsfolk, and proceeded to utilize his liquor. At the home of a brother-in-law, it was decided to go to the deceased's home, wake him up, it being night time, and share some of the liquors with Mr. Shockey. This was done, and other relatives came in, and the drinking proceeded. In the testimony, it is shown that appellant became rather hospitable and insisted on his guests

partaking freely of the liquor, suggesting that if necessary, he would obtain more of it, being in possession of money. This statement brought forth from his wife the reply, "And me bare-footed," and probably caused some words to pass between appellant and his wife with her father (the deceased) apparently agreeing with appellant in his argument. Soon thereafter, appellant and deceased left together, apparently on friendly terms, going away from where the family was gathered, carrying with them a bottle of whisky. About daylight on Sunday morning the family of appellant decided to go back to Ennis to their home and began to look for appellant. They were unable to find either him or the deceased and eventually left without appellant. Proceeding but a short distance out of Corsicana, they turned around and went back to deceased's home, but it was locked and they could not enter. They then went to a brother-in-law's house, but awakened no one. They then drove down around a cotton mill, and about daylight they saw appellant, who got in the car. Upon being asked where the deceased was, he replied that he had left him down by the ice plant. They then drove around town hunting for the deceased, finally going to the jail. The family, including appellant, then drove back to Ennis, and after reaching Ennis, appellant complained of being sick and said that he was going blind. He requested that someone pray for him, and some doctors were evidently called to attend him. At about 8:00 o'clock Sunday morning, through some means, the family found out that Mr. Shockey was dead. Early in the morning of March 17th, the body of Mr. Shockey was found near the ice house and the Oil City Iron Works in Corsicana, in an opening between two railroad tracks, the body having two bruised places on the head and a stab wound near the heart. An open knife identified as that of the deceased, and stained with blood, was found near the body, and a folded Sunday-edition newspaper was at his side. The deceased's pocket-book was found in his pocket, containing $18.00, and fifteen cents were found on the right side near the body, and the same amount was near its left side on the ground. Soon after the finding of this body, the Deputy Sheriff of Ellis County filed an affidavit before a Justice of the Peace of that county alleging that implements used in connection with the murder of W. J. Shockey in Navarro County, Texas, were kept, and that he believed that such implements were then concealed by appellant in a certain house, same being the home of appellant. A search warrant was thereupon issued to such officer and he proceeded to search said house. He did not find any implements that could be said to have been used in the murder, but he did take from appellant's person a suit of clothes, a hat, a shirt, shoes, a tie, socks, and a leather belt. Upon the

clothing were found spots which were later identified by a chemist as being human blood. Grease spots were also found on the pants, and hair similar to that of deceased.

There is practically but one question presented to us, and that is the admissibility of the fruits of this search, the introduction thereof in this trial having been objected and excepted to from every possible angle. In truth, the careful trial court in his qualification to Bill No. 1 states:

"It is my opinion that if this evidence, secured from an examination of Defendant's clothing, was inadmissible under the circumstances, then the court's error was material and Defendant should be accordded a new trial."

This matter has been gone into at some length in the original opinion in the case of Cagle v. State, 180 S. W. (2d) 928, where the decisions of this court, as well as those of the Supreme Court of the United States, were discussed. In that discussion it will readily be seen that while the Constitutions, both State and Federal, allow a search for implements with which a crime may have been committed, they are careful to exclude matters from such allowed search that are purely evidentiary. We do not mean to hold, however, that the mere fact that certain seized matters are of value as evidence and also come within the category of an implement, that same would not be admissible under a proper search warrant. It is also worthy of note herein that although the search warrant included herein a warrant for the arrest of appellant, such warrant of arrest was not executed by the deputy sheriff at the time of the search.

Because of the fact that this search developed matters of evidence only, the results thereof were not admissible against appellant, and because of the introduction of such evidence over proper objection, this judgment is reversed and the cause remanded.