DAVID GONZALES MEZA v. STATE

No. 34,686.   June 20, 1962

*Ralph Chambers, Allan J. Showers,* and *King C. Haynie* (on appeal only), Houston, for appellant.

*Frank Briscoe,* Criminal District Attorney, Houston, and *Leon Douglas,* State's Attorney, Austin, for the state.

WOODLEY, Presiding Judge.

The offense is murder; the punishment, life.

The sufficiency of the evidence to sustain the conviction is challenged.

The question is whether the circumstantial evidence, viewed in the light most favorable to the state, is sufficient to sustain the jury's finding that the appellant is the person who committed the offense.

The deceased, a 50 year old Latin American, 5 feet 6 inches in height and weighing 131 pounds, met his death in Houston shortly after 1:15 A.M. by being stabbed in the back.

The wound was described by the Harris County Medical Examiner, whose qualifications as an expert were stipulated, as being a knife wound 1½ inches in length and 2 inches in depth, the edges sharply demarcated. The witness testified that the wound penetrated the aorta, and that it was a wound such as could have been caused by the knife introduced in evidence.

The evidence shows that the blood stained knife was taken from the pocket of a suit of clothes found in appellant's room which appellant claimed, and which he was wearing at the trial. The knife was described as having a sharp blade ½ inch wide and some 4 inches in length, with a very sharp point.

The deceased left the Sibony Night Club in company with the band leader and operator Ponce after closing time, which was 1:15 on Sunday morning. When they got downstairs Ponce went to his car and he and his wife left for home.

Ponce testified that he never saw the deceased again and did not know what direction he went as they parted.

The deceased passed the Fire Station on Hogan Street, walking west toward North Main Street and the old Henke-Pillot building. He was alone and nodded at the firemen as he passed.

The deceased also passed Vincent Lucio, his wife Isabella and his sister Mary Lou, who were at or near the corner where there was a bus stop.

The appellant, according to the testimony of the Lucios, had come with them from the Pan-American Night Club where he and Mary Lou had been dancing and drinking. They were considering going to the Casa Blanca but appellant declined and Mary Lou, who had been walking behind with appellant, left him and joined her brother and sister-in-law and walked to the bus stop.

When the deceased passed going in the direction where Mary Lou had left appellant, Mary Lou started to walk back. She testified that she called the appellant but he did not answer; that she got within three feet of the northwest corner of Henke-Pillot building and, as she returned to the bus stop, the deceased fell near the corner of the building, and that right after he fell she saw appellant pass the fire station.

Captain Kent, of the Houston Fire Department, testified that after the deceased, known to him only as "Cheto", passed the station and the bus stop going in the direction of the old Henke-Pillot building, Mary Lou followed behind him some 20 feet; that Cheto hollered "No, No" * * * "and there was a person chasing him. And they chased him up to this building. The girl, then, headed back hastily toward the corner. * * * The person shoved Cheto out of sight. * * * Immediately, the man came around the building. Cheto collapsed on the sidewalk."

Captain Kent further testified that as Cheto was around behind the building "You could hear the thud of him being slammed on the building. * * * I heard a groan, as Cheto was slammed into the building * * * "; that as Cheto fell and Mary Lou ran to her brother and sister-in-law she said, and repeated many times, "It could have been me" or "It might have been me."

Captain Kent called the police dispatcher and, as he stepped to the door: "I *seen* a figure run across the street, from the rear of Henke & Pillot's old store, which is now the World Market. Ran across the street, into the driveway of a Fire Department

Garage, and stopped, and started walking. Stopped running, and started walking toward us. * * * ''

"Q. * * * Where did that person go, as he was walking toward you? Show us where he went.

"A. He passed beyond us, and as he approached the station, he glanced up. Glanced in my direction, turned the corner, and went on down Hogan Street, going west. * * *

"Q. All right, sir. How was this defendant dressed at that time?

"A. In the same suit he has on now, or approximately the same suit."

It was a matter of seconds, according to this witness, between the time Cheto fell and the time he saw appellant come around the corner. He identified appellant at a police line up and at the trial as the person who came around the corner and passed the station.

M. B. Jones, who was visiting at the fire station, followed the appellant, and Captain Kent and other firemen went to Cheto and found that he was dead.

Firemen Itson and Irwin and M. B. Jones gave testimony similar to that of Captain Kent, though neither heard the sound or groans described by Kent.

According to all of these witnesses, there were no persons seen in the vicinity at the time the deceased was stabbed other than those above mentioned. Several assembled after the officers arrived, however.

Captain Kent testified that he was the first person to get to the body of Cheto and "there was no other person in the general vicinity whatsoever."

Appellant did not testify or offer evidence in his behalf.

We find the evidence sufficient to sustain the jury's verdict finding the appellant guilty of murder with malice.

Appellant's third complaint relates to his several informal bills

of exception to testimony of Officer Kennedy relating to acts and statements of appellant while under arrest.

Several days after the killing, appellant was arrested by Officer Kennedy at the rooming house where he lived. The officer testified that appellant consented to the search of his room.

The trial court was careful to exclude testimony as to any statement or declaration of the appellant, but it is contended that the witness was permitted to testify as to acts of the appellant which were in the nature of a confession and might have been used by the state as a criminative fact against him. He cites Hill v. State, 95 Texas Cr. Rep. 500, 255 S.W. 433; Glover v. State, 92 Texas Cr. Rep. 617, 247 S.W. 556; and Kennison v. State, 97 Texas Cr. Rep. 154, 260 S.W. 174.

The only act we find which could be said to come within the rule relied upon is the testimony of the witness to the effect that he asked the appellant what clothes he was wearing on the previous Saturday night (to which there was no objection). The witness was then asked and answered: "Q. All right. Did he point out any clothes to you?" "A. He did." After this question and answer objection was made and overruled, but there was no motion to exclude the evidence. The question having been asked and answered before the objection, and there being no effort to have the evidence withdrawn from the jury, no error is presented warranting reversal. See Earwood v. State, 161 Texas Cr. Rep. 171, 275 S.W. 2d 652; Bearden v. State, 170 Texas Cr. Rep. 192, 334 S.W. 2d 447.

The witness then testified without further objection: "And what clothes did he point out to you, sir?" "A. He pointed out a charcoal colored suit. The same suit that he is wearing now * * *."

As presented, the court's rulings do not call for reversal.

The remaining complaint relates to the testimony of Officer Kennedy that a suit of clothes was found in appellant's room, which was identified by the witness as the suit appellant was wearing at the time of the trial, in which the knife above referred to was found. The contention is that the clothing was not the subject of a lawful search and seizure, it being purely evidentiary. La Rue v. State, 149 Texas Cr. Rep. 598, 197 S.W. 2d 570, is relied upon.

The clothes do not appear to have been seized. The search was with permission of the appellant, and therefore lawful, hence the rule relied upon by appellant has no application. The fact that appellant was under arrest when he gave consent did not vitiate the same. Henderson v. State, 172 Texas Cr. Rep. 75, 353 S.W. 2d 227; Graves v. State, 169 Texas Cr. Rep. 595, 336 S.W. 2d 156; Sikes v. State, 169 Texas Cr. Rep. 443, 334 S.W. 2d 440; Feather v. State, 169 Texas Cr. Rep. 334, 333 S.W. 2d 851.

No reversible error appearing, the judgment is affirmed.