ARTHUR L. JOHNS, *alias* JOHN LEROY CROW V. STATE.

No. 24968. January 17, 1951.
Rehearing Denied March 14, 1951.

504

*B. T. Bader, Dallas,* for appellant.

*Will R. Wilson, Jr.,* Criminal District Attorney, *William B. Henley* and *Charles S. Potts,* Assistants District Attorney, Dallas, and *George P. Blackburn,* State's Attorney, Austin, for the state.

GRAVES, Presiding Judge.

This is a charge of the rape of a girl under the age of 18 years, and upon a trial thereof appellant was found guilty and given a penalty of a life term in the state prison, and he appeals.

The testimony shows that the girl, Shirley Mae Johns, was 13 years old at the time of the alleged occurrence. This girl's mother was married to appellant and died some three months after the girl's birth. The child was for a while reared by the defendant's mother until she was about nine years old. She was always told that appellant was her stepfather. When the stepfather's mother died, the girl lived with appellant and seemed to have moved from pillar to post in Iowa and Texas, traveling through many of the different states of the Union. When this girl was 10 or 11 years old, her stepfather married again, and for awhile they lived together, but the new wife left them about two years prior to this trial. Eventually, in their wanderings they came to Dallas, where the acts herein complained of are alleged to have taken place. This girl testified that on a day in July, 1949, her stepfather had an act of intercourse with her, after which he inserted a banana into her private parts, and then put a weiner into her private parts, and thereafter ate both the banana and the weiner. Evidently this latter act was looked upon by the girl as a punishment for some undisclosed reason. They were both unclothed and were sleeping on the same bed at the time. He had a little gun and threatened to kill her if she told anyone, and she did not tell it at such time. However, two days after this happened, she called the police and told them about it.

In the cross-examination of this witness the defense brought out the fact from her that appellant had brought up the proposition of their being married so that if the police questioned their acts, he could show that this girl was his wife, but no marriage had ever occurred. In discussing this question of marriage, the girl testified as follows:

"I told the jury that the defendant spoke of marriage on several occasions. One reason for it I think was because he wanted to join the Army. He didn't have no place for me. I know that was the reason because he told me. Another reason was that he was afraid somebody would find out about our living. He told me that, too. He was afraid they would find out he was having intercourse with me, and he said if anybody finds out, he would have a marriage license to prove that we had gotten married.

"The defendant had had intercourse with me before then. He started having intercourse with me when I was ten years old. That was up in *Souix* City, Iowa. He would have intercourse with me every other night, and sometimes every night. He just didn't want me to go to school, seemed like."

The state introduced in evidence the voluntary statement of appellant as follows:

"My name is John Leroy Crow. My address is 1509 So. Harwood. I am 43 years old. I was born in Ponca, Nebraska, a small town about 150 miles from Lincoln. I lived in several other towns in Nebraska and went to Sioux City, Iowa, when I was around 11 or 12 years old. When I was 15 I left and did a lot of roaming around. In 1935 I met a woman named Fern Wonderly and married her in the latter part of 1935, Nov. 5th. A baby was born to Fern, March 29th, 1936, a girl, and Fern named her Shirley Mae. On Aug. 22nd, 1936, Fern died and my mother (Leona Dyer) took care of Shirley until she died in 1945. After this I hired a housekeeper and kept her for a little while. In the month of Nov. 1945, I married *Michy* Billingmeir and we lived in Sioux City, Iowa. In the month of Sept. of 1947 *Michey* was away from home and I was sleeping in one room and Shirley was sleeping in the other room. I woke up and Shirley was in bed with me and was loving me. I believe it was the next night Shirley went to bed with me and I had an intercourse with her. She was about 11 years old then. I had a few more such relations with her before Mickey came back. In October of 1947 Mickey and Shirley and I decided to come to Texas. We went to several towns, then went to Tyler, Texas. We rented a little acreage there to raise chickens. In the last part of April Mickey left me. (I don't know where she went). After Mickey left I started sleeping with Shirley again. In Nov. we moved to Dallas and in January we moved to 1509 So. Harwood. Shirley and I talked it over and decided that we wanted to get married when she got old enough. I continued to sleep with Shirley as man and wife and the last intercourse I had with her was about four or five nights ago."

Bill of Exceptions No. 1 is concerned with a motion made by appellant's attorneys in which they assert that they were not going to controvert the acts of intercourse between appellant and his stepdaughter, but that they were informed that the state intended to prove prior acts of intercourse between such parties. This motion being offered prior to the trial, we think the court was correct in refusing to make a ruling thereon,

since prior to such being offered, he had no way of knowing whether this testimony would be admissible or not.

Bill of Exceptions No. 2 relates to a further motion requesting the court to instruct the state's attorneys not to offer that portion of the testimony relative to the insertion of certain articles into the private parts of this girl. This motion was also overruled by the court on the ground that he had no way of knowing at such time whether such acts were admissible or not.

Under the full statement made by this girl, we think such conduct upon appellant's part was a portion of the res gestae, she having stated, "He had intercourse with me once that day. * * * He put this banana and this weiner inside of me after the act of intercourse."

Bill No. 4 relates to the same proposition. We think the state has the right to prove its case in any way it may see fit under proper rules and regulations, and an accused cannot be allowed to direct either the method or manner of such proof. See Beard v. State, 146 Tex. Cr. R. 96, 171 S.W. (2d) 869.

Bill No. 5 relates to a question propounded to this girl after she had testified to the unnatural acts of intercourse with her stepfather and his actions immediately thereafter, and she was asked the question, "Have these acts occurred before?" Before the objection thereto had been ruled upon, the girl answered, "Yes, many times." Whereupon the trial court sustained appellant's objection thereto and instructed the jury not to consider the question and answer for any purpose. Nevertheless, appellant's attorneys insisted that the question and answer could not be eliminated from the minds of the jury and asked for a mistrial. The bill herein attempts to make this question refer to the insertion of a banana and the weiner in the girl's body, but the trial court refuses to so certify, and refers us to the statement of facts. From its perusal, it seems to refer to prior acts of intercourse of which there seemed to be many, and this matter will be further discussed in Bill of Exceptions No. 6.

This last bill refers to the introduction in proof of further acts of intercourse had between the appellant and the prosecutrix while in Dallas, as well as other acts with her stepfather while in other states, beginning, it seems, while she was ten years old and living in Sioux City, Iowa.

Bills Nos. 7 and 8 also involve the same proposition relative to the admission in evidence of prior acts of intercourse in a charge of rape under the age of consent.

It is here worthy of note that while appellant did not take the witness stand, he did enter a plea of not guilty, and it became the duty of the state to prove its case. See Booker v. State, 124 Tex. Cr. R. 562, 63 S.W. (2d) 1033; also 42 Tex. Jur. p. 78, sec. 55.

The decisions of this court relative to the admission of prior acts between the same parties in prosecutions such as the instant one have not been entirely uniform and have caused some confusion in trials therefor.

We do hold that in trials of an accused for rape under the age of consent and if material in determining the truth or falsity of the accusations, there can be taken into consideration the associations between the parties and their evident regard each for the other as evidencing the probability of the charged act and the unnaturalness of the accused's attitude toward the victim of his lust, even in the presence of other acts of like character to the one on which the prosecution is based.

We quote again from People v. Scott, 141 Pac. 945, as set forth in White v. State, 137 Tex. Cr. R. 481, 131 S.W. (2d) 968, 969, as follows:

"Any act or declaration of defendant tending to show a desire or purpose on his part to have illicit relations with the prosecutrix or any solicitation or representation made by him to excite a similar desire on the part of his victim, or to overcome her natural aversion to wantonness, would be relevantly and clearly connected with the crime and therefore admissible."

In matters of incest or rape under the age of consent, it is often of importance to show the attitude between them and the relative size, age and strength of the parties, and if possible, to show how one in a position demanding care and guidance of a related person, has failed in such duty and has adopted an unnatural attitude relative thereto, and by fondling or otherwise, evidences a desire for sexual gratification toward such child or relative. We therefore think that where any such acts become material to thus show them they are admissible. That the previous sexual conduct with this girl prior to the charge and since she was a 10-year-old child was admissible herein.

Any cases holding to the contrary will be overruled without setting forth the same herein.

Bill No. 7 complains because the prosecutrix was allowed to testify that appellant had proposed marriage to this girl; "that he said if anybody finds out, he would have a marriage license to prove that we had gotten married." We are impressed with the fact that such was a part of the scheme by which appellant was endeavoring to protect himself from the consequences of his acts with this girl, who was too young at such time to have contracted marriage with anyone. See Article 4603, R. C. S. The trial court's qualification to this bill evidences the fact that this matter was rendered admissible on the further ground that this question was initiated by appellant's previous cross-examination of the prosecutrix.

Bill No. 8 relates to the proof by the state on re-direct examination of the prosecutrix in which she was interrogated relative to acts of intercourse taking place previous to the one charged in this indictment. This bill's qualification on the part of the trial court shows that this line of testimony was, in the opinion of the trial court, proper, having been opened up by the defendant's own cross-examination. As said by us in the discussion of Bill No. 5, we think such previous acts were admissible herein.

It is true that this record shows that appellant had begun debauching this girl when she was three years younger, at the age of ten years, and that such conduct began in Sioux City, Iowa, where they were then living, and continued up to the date mentioned in the indictment.

Bill No. 9 complains of such showing as being three years previous to the instant one, well beyond the bar of the statute of limitations, and therefore inadmissible. Under what we have herein said, such previous acts had value in showing the attitude of appellant toward this girl as being lustful, and calculated to lead her into a life of wantonness rather than the attitude of protection demanded of him towards this child of his deceased wife.

Bill No. 10 contains an objection to a written statement signed by appellant as set forth hereinabove and was objected to on the grounds that appellant having made no denial of his guilt, he not having taken the witness stand, that such confession was therefore inadmissible; and again, that the portions

thereof that related to acts of intercourse with the girl prior to the one set forth in the indictment and his continuation of such acts should have been excluded therefrom because there had been no controverting nor any denial of the act herein charged.

As previously held herein, we think the failure to deny such charged act with the girl would not limit the state in its presentation of the facts pertinent to the issue, and especially so by virtue of the fact that a plea of not guilty had been entered herein by the appellant. See Beard v. State, 146 Tex. Cr. R. 96, 171 S.W. (2d) 869.

Further Bills Nos. 11, 12 and 13 relate to certain remarks alleged to have been made by an assistant district attorney to the jury in his closing argument. In the first place, there is naught to show that these remarks were made, the trial court certifying that he had no recollection thereof; and again, we think, if same were made, they do not seem to have been such that could have materially affected the jury in its deliberations, and were not of such importance as to merit a reversal hereof.

We have carefully gone over this record and find nothing therein that would call for a reversal hereof.

The judgment is accordingly affirmed.

ON APPELLANT'S MOTION FOR REHEARING.

DAVIDSON, Judge.

By an able and well written motion for rehearing, appellant insists that we erred in holding admissible evidence of prior acts of intercourse between the parties.

The conclusion expressed in the original opinion was reached only after a careful consideration of the question by the entire court. We remain convinced that a correct conclusion was reached. It would serve no useful purpose to write further.

We cannot agree that in approving Bill of Exception No. 8 the trial court certified to the commission of error in admitting proof of the prior acts of intercourse, which we hold to be admissible.

The motion for rehearing is overruled.

Opinion approved by the court.