LEONARD EARWOOD V. STATE

No. 27,254. January 12, 1953
Rehearing Denied (Without Written Opinion)
March 9, 1955

*Shead & Holt,* by *Nathan Holt,* Longview, for appellant.

*Wesley Dice,* State's Attorney, Austin, for the state.

WOODLEY, Judge.

The conviction is for rape; the punishment, 25 years in the penitentiary.

The indictment alleged the rape of the prosecutrix, a female under 18 years of age, on or about March 9, 1953.

The evidence shows that the prosecutrix was the adopted daughter of appellant and his wife. She was 12 years old at the time of her adoption, which was early in 1952, and was 15 at the time of the trial in May, 1954.

At the same time the prosecutrix was adopted, appellant and his wife also adopted her four-year-old sister.

The prosecutrix testified that appellant, soon after her adoption, had intercourse with her, and continued to do so at intervals until about March 9, 1953. The last act, she testified,

occurred in the bathroom of the home which she occupied with appellant, his wife and her sister.

She further testified that she reported appellant's conduct to Mrs. Mary Hunter, the mother of appellant's wife, who was visiting in the home.

Mrs. Hunter, testifying as a witness for the defense, gave a different version of this report. She testified that the prosecutrix said: "I was talking to Uncle Ollie and Aunt Joe, and they told me if I wanted to get away and go home, for me to tell Mother and Tommie that my Daddy had been getting in my pants."

Mrs. Hunter also testified on cross-examination as follows: "As to whether this child told me about this man having sexual intercourse with her, she didn't say that. As to whether that child told me that, I am not going to tell a story intentionally. She didn't tell me positively—she said her Mother and Daddy had told her she could tell Leonard had been getting in her pants."

At any rate, it appears that on March 14, 1953, through Mrs. Hunter's son (appellant's brother-in-law) the report of Mrs. Hunter reached the natural mother of the prosecutrix and her aunt, Mrs. Miller, and the prosecutrix was taken to the office of Dr. Holcomb, Physician and County Health Officer.

Dr. Holcomb examined the child on March 14, 1953, and testified that he found "a marital type vagina" by which was meant "that seen in a married woman, one who has had frequent intercourse" and which would not be natural in a child of 14.

Dr. Holcomb testified that from what he had observed, the prosecutrix had had sexual intercourse with some male evidently on many occasions over a period of several months and possibly for at least a year; a condition which it was not likely could have developed from sexual intercourse with boys of her age or from masturbation.

A witness for the state testified that appellant, in August of 1952, told him that "he had had intercourse with an adopted daughter of his." Another state's witness testified that he heard appellant say in effect "I had to adopt the little girl in order to get the big one."

Appellant testified, as did his wife. He denied that he at any time had sexual relations with the prosecutrix and denied that he made the statements attributed to him, above mentioned. Mrs. Earwood, appellant's wife, denied that she had ever seen anything in the way of misconduct on the part of her husband with the prosecutrix.

The defense was that the charges brought against appellant were planned, advised, encouraged and engineered by the natural mother and other relatives of the prosecutrix in order to regain her possession and custody. Also there was testimony that appellant was not present on March 9, 1953, the time the prosecutrix claimed he had sexual relations with her in the bathroom of their home.

The issues of fact were resolved against appellant by the jury, and the evidence is sufficient to sustain their verdict.

There are eight bills of exception, all formal, each of which is qualified by the trial court. They will be considered in the order in which they appear in appellant's brief.

Bills 6 and 7 relate to cross-examination of appellant's wife by the attorney representing the state. Bill 6 complains that the wife witness was asked if she was acquainted with or had been informed about a rule of law that prevents the state asking anything that has not been gone into or inquired about on direct examination. The witness answered that she knew that she could not be asked about anything the attorney for her husband did not go into.

We are unable to agree with appellant's contention that the effect of the question was the same as if the state had called appellant's wife as a witness. This cross-examination does not impress us as prejudicial or improper.

Bill No. 7 complains that the wife witness was asked, on cross-examination, regarding the natural mother. "It was some several weeks before the adoption papers were final and this mother consented to the adoption, but as black as you would have everybody to believe, the mother was as sorry and low down as you could picture that mother, she still was interested in the child?"

The qualification of the trial court as well as the record of

the direct examination of this witness show that she had testified at length concerning the children, the adoption, and the conduct of the natural mother in thereafter interfering by telephone calls and clandestine visits with the child at school.

Appellant particularly complains of the reference to the witness having pictured the mother as sorry and low down and black, and insists that this was a matter not gone into on direct examination.

We note that in addition to the conduct attributed by this witness to the natural mother and Tommie Johnson, her direct examination contains such statements as "she says he is her husband; they were living together at that time." The effect of the defense testimony was to suggest that the natural mother had been a party to false accusations being made against appellant by the prosecutrix.

Under these facts we do not regard the cross-examination as a violation of Art. 714, V.A.C.C.P., regarding the husband or wife of the defendant as a witness.

Bill 5 complains that the county attorney was permitted to cross-examine the appellant relative to a peace bond proceeding.

The qualification to this bill shows that the defendant testified to having been arrested on a peace bond proceeding before any objection was made. The question complained of in this bill "Was this the only Peace Bond proceeding you have ever had?" was withdrawn when objection was made. Reversible error is not shown by this bill.

Bill No. 3 complains that the prosecutrix was asked and permitted to answer in the affirmative if she had called Judge Hall, the presiding judge in the trial of this case, and reported to him that the appellant was mistreating her. This conversation occurred many weeks after the occurrence and was objected to as hearsay and too remote and as not constituting outcry.

The qualifications to this bill disclose that the prosecutrix testified on cross-examination that she called Judge Hall, but did not tell him; "didn't tell anybody except Mrs. Hunter."

No reference had been made to such conversation while the

prosecutrix was testifying on direct examination. On re-direct she was asked, and answered without objection:

"Q. You said awhile ago in answer to his question, that you called Judge Hall on the 'phone, and he asked you if you told Judge Hall about this man having intercourse with you, and you said you didn't; now, just tell the jury about you calling Judge Hall? A. I told him how Bob was doing, and he talked too loud I hung up.

"Q. Who talked so loud? A. Judge Hall.

"Q. Were you afraid? A. Yes.

"Q. You didn't tell this man about this man having sexual intercourse with you? A. No.

She was then asked to relate the conversation she had with Judge Hall, to which appellant objected: "Your Honor, it would not be an outcry she was making; if she didn't report to the court that the defendant was outraging her it would not be admissible; it would be hearsay."

This objection being overruled, the re-direct examination proceeded as follows:

"Mr. Woodall: Q. Did you tell Judge Hall that Bob Earwood was mistreating you in any way?

"Mr. Shead: That's a leading question, same objection.

"The Court: I overrule the objection.

"Mr. Woodall: Q. Did you or not tell Judge Hall that Leonard Earwood was mistreating you?

"Mr. Shead: Your Honor, that's a leading question, same objection.

"The Court: I overrule the objection.

"Mr. Shead: Note our exception.

"Mr. Woodall: Q. Your answer is what?

"A. I did."

The witness having testified on cross-examination that she had a conversation with Judge Hall "but did not tell him," and having testified without objection on re-direct examination that she "told him how Bob was doing" but was afraid and did not

tell Judge Hall about appellant having sexual intercourse with her, we would not be justified in ordering a reversal of the conviction because she was permitted to testify over the objection indicated that she told Judge Hall that appellant was mistreating her.

No error is shown by Bill of Exception No. 4, the question having been asked and answered before any objection was made and no motion having been made to have it withdrawn from the jury. See Crenshaw v. State, 158 Texas Cr. Rep. 209, 254 S.W. 2d 402; Prince v. State, 158 Texas Cr. Rep. 320, 254 S.W. 2d 1006; Adams v. State, 158 Texas Cr. Rep. 306, 255 S.W. 2d 513; Deams v. State, 159 Texas Cr. Rep. 496, 265 S.W. 2d 96.

The remaining bill relates to the admission of testimony regarding acts of intercourse between the prosecutrix and appellant other than the act relied upon.

The question has been settled contrary to appellant's contention and the testimony held admissible in Johns v. State, 155 Texas Cr. Rep. 503, 236 S.W. 2d 820. See also Head v. State, 160 Texas Cr. Rep. 42, 267 S.W. 2d 419, and Gephart v. State, 157 Texas Cr. Rep. 414, 249 S.W. 2d 612.

No reversible error appearing, the judgment is affirmed.