JAMES MILLER V. STATE

No. 28,888. March 20, 1957.
Appellant's Motion for Rehearing Overruled
(Without Written Opinion) April 24, 1957.

*Alex P. Pope,* Tyler, for appellant.

*Harry Loftis,* Criminal District Attorney, *R. S. Burrus,* Assistant Criminal District Attorney, Tyler, and *Leon Douglas,* State's Attorney, Austin for the state.

MORRISON, Presiding Judge.

The offense is statutory rape; the punishment, 50 years.

Prosecutrix, who was fourteen years of age on the day charged in the indictment, testified that the appellant, her father, had begun to have acts of intercourse with her when she was twelve and continued to have intercourse with her intermittently until she left his home and reported his conduct to the authorities. She stated that the acts occurred at home in bed while her stepmother was away at work.

The appellant was arrested and made a confession, which, omitting the formal parts, reads as follows:

"My name is James R. Miller, Rt. 1, Tyler, Texas. I am married. I have five children. I am the father of Sarah Ann Miller. She is fifteen years old. Between two and three years ago, I came home one night when I had been drinking. My wife and the other children were at her mothers, Sarah Ann was sleeping with me and I had intercourse with her at that time. It was about three or four months before I had intercourse with her again in my bed. The three youngest children stay at their grandmother's during the week and just come home on the weekend. Since the first time I had intercourse with Sarah Ann, I have had intercourses intermittently with my daughter. About two weeks ago, on the 30th of March, was the last time I had intercourse with her. I was drinking that night and was drinking on all of the occasions that I had intercourse with her. I came home and she was there alone. My wife works from eleven until seven and there was no one at home except my daughter, Sarah Ann, and the boy, who slept in another room.

"Last night, which was April 11, I had been drinking some and my daughter and I watched television until it went off. Then we got into the same bed and we got into an argument about her grades. I tried to put my arm around her and love her and she got mad. Then I took my belt and whipped her. She said she was going outside and I did not see her again. I was not trying to have intercourse with her last night. I was just trying to love her.

"I have tried to protect her and have never let her go out with boys and have dates. I whipped her once for getting into a car with a boy by herself. I did this because I thought she was too young to be going out with boys. Sarah Ann had already had intercourse with someone else before I had intercourse with her. I do not know who with or when it happened but I do know that she had had intercourse before and I never did force her to have intercourse with me."

The appellant, testifying in his own behalf, admitted that he signed the confession but stated that he did so because the deputy sheriff who had him in custody told him "not to think anything of it; they had things like that to happen every day and for me to go ahead and sign anything they wanted me to sign; that there wouldn't be anything further to it." He stated that the district attorney had prepared the statement and that he had signed it because of what the deputy had told him.

On cross-examination, he admitted that after the confession was prepared he told the district attorney that he wanted to add something to it and that at his insistence this sentence was added: "Sarah Ann had already had intercourse with some one before I had intercourse with her." Both the district attorney and the deputy sheriff were called and denied that any such statement as attributed to the deputy by the appellant in his testimony had been made to the appellant.

Dr. Bundy, county health officer, testified that he examined the prosecutrix on the day she reported appellant's conduct to the district attorney and found that she was capable of having an act of intercourse with a normal male adult.

This is a brief statement of what we consider the essential evidence in the case. The defensive testimony will be discussed fully in connction with a discussion of the bills of exception.

No brief has been filed in behalf of the appellant, but we

will discuss the bills which present the most serious questions as we view them.

Bill of Exception No. 1 relates to the testimony of the prosecutrix about the other acts of intercourse with the appellant prior to the date charged in the indictment. It has been the consistent holding of this court since Johns v. State, 155 Texas Cr. Rep. 503, 236 S.W. 2d 820, that proof of prior and subsequent acts is admissible to explain and lend credence to the testimony concerning the conduct of the parties on the occasion charged in the indictment which would not otherwise appear plausible. See Gephart v. State, 157 Texas Cr. Rep. 414, 249 S.W. 2d 612; Earwood v. State, 161 Texas Cr. Rep. 171, 275 S.W. 2d 652; and Ball v. State, 289 S.W. 2d 926.

Bill of Exception No. 2 relates to testimony of prosecutrix that appellant's wife, who was her stepmother, "knew it all along" on the grounds that the prosecutrix' knowledge of such fact was based on hearsay.

On cross-examination, prosecutrix made the following unresponsive answer to a question: "Martha (appellant's wife) said she knew it all along." No objection was made that the answer was unresponsive; in fact, no objection was made at all but, instead, the appellant pursued the matter as follows:

"Q. (by appellant's counsel) She said she knew it all along? A. Yes, sir.

"Q. You sit there and tell this jury that Martha Miller (appellant's wife) told you that she knew that you and James had been intimate all along? A. She didn't tell me.

"Q. Then how do you know that she said it if she didn't tell you and you didn't hear it? A. She told Mr. Parker and Mrs. Goff.

"Q. When, that night? A. No, sir.

"Q. Were you present when she told them? A. No, sir; they told me."

It was not until he had elicited all this information and more that the appellant objected on the grounds that the same constituted hearsay.

Since the appellant himself went into the matter and elicited the answers and failed to timely object, we have concluded that reversible error is not reflected by the answers so elicited.

Bill of Exception No. 8 complains of cross-examination of the appellant's wife. On direct examination, she was asked this question:

"Q. Now, at any time, tell the jury if you ever found any evidence of any acts of intercourse, semenal stains upon any of the bedclothing upon the clothing of the prosecuting witness, Sarah Ann Miller at any time ever? A. No, sir."

She testified further that the prosecutrix reported to her, more than a week after the day charged in the indictment, that the appellant had been intimate with her and that she had at that time told the prosecutrix that she did not believe her.

On cross-examination, the following transpired:

"Q. Mrs. Miller, you knew that James R. Miller was having intimate relations with your step daughter, Sarah Ann before the time she told you, did you not? A. No, sir.

"Q. Isn't it true that some two or three months before you went with Mrs. Parker and her daughter-in-law in a car in which you all were looking for a job? A. Yes, sir.

"Q. And. isn't it true at that time that you told these two people that your husband was being intimate with his own daughter? A. No, sir.

"Q. And didn't you tell, at that time, that you wished he would have relations with you instead of your—his own daughter? A. No, sir, I did not."

At this point, the appellant objected "to every bit of this cross-examination."

We have concluded that the direct examination of the witness stated above was tantamount to a denial by the witness that she knew of any intimacy between the parties until after the day charged in the indictment and authorized the asking of the first question set forth above on cross-examination. The negative answer to that question authorized the subsequent

questions in order to lay the predicate for possible impeachment. We observe further that the objection was not timely made.

Finding no reversible error, the judgment of the trial court is affirmed.