**Antonio PACHECO, Jr., Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 07–88–0052–CR.**

Court of Appeals of Texas,
Amarillo.

Jan. 24, 1989.

Lonnie Markley, Amarillo, for appellant.

Danny Hill, Dist. Atty., Jon R. Waggoner, Asst. Dist. Atty., Amarillo, for appellee.

Before DODSON, BOYD and POFF, JJ.

BOYD, Justice.

In this case a jury convicted appellant Antonio Pacheco, Jr. of sexually assaulting his ten-year-old daughter. The trial court assessed his punishment at sixty years confinement in the Department of Corrections. In this appeal, and in one point, Pacheco complains that evidence of his having had sexual contact with his daughter on ten previous occasions should not have been admitted. We disagree with that complaint and affirm the judgment of conviction.

In the indictment, the State alleged that Pacheco sexually assaulted his daughter on or about the 2nd day of August, 1987. The complainant, H____, testified that on that date her mother was at church and H____ was alone in the house with her father. He took her into her brother's bedroom, took off both their clothes and laid on top of her. However, before he could complete an act of sexual intercourse, he was interrupted by the sound of his sixteen-year-old daughter pounding on the door of the house to obtain entrance. Pacheco had previously locked the door. H____ said that three days earlier Pacheco had taken her into her mother's bedroom and had sexual intercourse with her. She then testified that appellant had gotten naked and done "these things" with her about ten times. She did not go into detail about those occurrences other than to say sometimes he (Pacheco) would place her on her stomach and sometimes on her back. Later, in response to a query from her sister A____ as

to whether her father had "touched" her, H____ also said she had never told her mother about what her dad was doing because she was "scared" and did not want to get him into trouble. He had told her he would be, if she did tell.

H____ was examined upon cross-examination as to whether she understood the difference between truth and falsity, whether she was coached on how to testify, and whether she was shown how to use anatomically-correct dolls during her testimony. The record shows that while the victim was confused or had little understanding about dates, time frames, and when the offense occurred in relation to other events in her life, she did understand the nature and obligation of her oath and she was mentally competent to testify.

A____, H____'s sister, testified that she asked H____ if her father had been "messing" with H____. Upon receiving an affirmative reply, A____ reported it to her mother, who eventually took H____ to the hospital. Deborah Hathaway, a sexual assault nurse employed at an Amarillo hospital, reported the findings from her examination of H____. These findings were consistent with the medical history and testimony given by complainant. Pacheco presented no testimony at the trial.

The thrust of Pacheco's attack is that the testimony as to the ten extraneous occurrences with his daughter was improperly permitted because he "did not deny the offense on the stand nor was the complainant's credibility attacked or undermined through cross-examination" prior to the admission of the extraneous offenses. He also argues that the inflammatory and prejudicial effect of the testimony exceeded its probative value.

Generally, evidence of an extraneous offense is inadmissible unless it is relevant to a material issue and its probative value outweighs the danger of unfair prejudice. *Boutwell v. State*, 719 S.W.2d 164, 178–79 (Tex.Crim.App.1985) (on motion for rehearing); *Williams v. State*, 662 S.W.2d 344, 346 (Tex.Crim.App.1983). However, Texas has long recognized that in a case involving sexual assault by an adult against a minor, testimony of extraneous offenses involving that adult and the minor in question may be admissible. *Martin v. State*, 400 S.W. 2d 919, 921 (Tex.Crim.App.), *cert. denied*, 385 U.S. 961, 87 S.Ct. 399, 17 L.Ed.2d 306 (1966); *Johns v. State*, 155 Tex.Crim. 503, 236 S.W.2d 820, 823 (1951). This is particularly true in cases which involve abnormal sexual conduct by a father, or one in a position of locus parentis, towards a minor. *Veloz v. State*, 666 S.W.2d 581, 582–83 (Tex.App.—Houston [1st Dist.] 1984, no pet.); *Pelham v. State*, 664 S.W.2d 382, 384 (Tex.App.—Amarillo 1983, pet. ref'd). The rationale supporting this is that the testimony "aid[s] the jury in properly evaluating the 'inherently questionable testimony of a minor against an adult responsible for his welfare' or in a position of authority and control over the minor." *Boutwell v. State*, 719 S.W.2d at 178–79. However, the decision as to whether to admit or exclude evidence of extraneous offenses can be made only after logical analysis and should never be made automatically or mechanistically. Indeed, the *Boutwell* Court cautions that:

> *Every* case must be examined on it[s] own facts, strengths, and weaknesses to determine whether the extraneous transaction is relevant to a material issue, and whether the relevancy value outweighs the prejudicial potential.

*Id.* at 174.

The potential prejudice to a defendant to be assessed is whether he will be tried for a crime with which he is not charged, or as a person predisposed toward criminal conduct generally, without regard to the particular offense for which he is indicted. It is against that possible prejudice that the probative value of the evidence must be weighed. *Mannie v. State*, 738 S.W.2d 751, 755 (Tex.App.—Dallas 1987, pet ref'd).

Generally, as a prerequisite to admission of evidence of an extraneous offense to explain the relationship between a defendant and a minor victim in a case such as this, the defendant must first deny the charged act or his relationship with the victim, or undermine the State's case by cross-examination. *Boutwell v. State*, 719

S.W.2d at 178. However, the *Boutwell* Court earlier explicated that the prerequisite of some denial by the defendant is " 'an aspect of the "more probative than prejudicial" analysis' " and is not purely an issue of timing, although timing may be a factor. *Id.* at 175. In an ordinary case, timing is an important factor in the application of the ultimate *Boutwell* test, *i.e.*, more probative than prejudicial, because, ordinarily, relevance cannot be balanced against prejudice until the defendant reveals his challenge to the State's case.

In this case, as in most cases involving the sexual assault of a child, the ultimate question to be resolved by the jury is the credibility of the minor child. However, this case, as are other parental sexual abuse cases, is unusual in that H___'s credibility was in doubt before she opened her mouth, simply because of the nature of her testimony, *i.e.*, she was accusing her father of the unnatural and scurrilous act of having sexual intercourse with his daughter. That type of testimony, characterized by the *Boutwell* Court as "inherently questionable," placed H___ at a disadvantage in testifying against her father.

This disadvantage is especially pronounced in a case of this nature where the father has it within his power to deny corroboration to the little girl. By his act in selecting the time and place of the assault, and the exercise of his parental authority in accomplishing the assault at that time and place, he has effectively denied the child the opportunity for corroboration. That is the reason for the long-standing Texas rule that similar sex offenses between a child and a parent may be admitted to aid the jury to properly evaluate the testimony of a minor against the adult responsible for her welfare. *Veloz v. State*, 666 S.W.2d at 582–83.

To overcome the inherent disadvantage of the minor, it is important to show that the charged offense did not occur "in a vacuum as a one-time act," for otherwise, the testimony of the child, standing alone, might be considered implausible or incredible. *Boutwell v. State*, 719 S.W.2d at 174–76. To properly accomplish this result,

such testimony, if otherwise qualified, may be admissible during the State's case in chief in order to enable the jury to properly evaluate the child's testimony against her father. *Accord Smith v. State*, 719 S.W.2d 402, 403 (Tex.App.—Houston [1st Dist.] 1986, no pet.).

The admission of testimony such as that challenged here is, of course, subject to the overriding rule again articulated by the *Boutwell* Court that its probative value must outweigh the possibility of prejudice. We have carefully reviewed this record in the light of that caution and find that the probative value of the questioned testimony outweighs any possible prejudice. This is particularly true in view of the minimal references in the record to the other assaults.

Appellant's point of error is overruled and, there being no reversible error, the judgment of conviction is affirmed.