TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-98-00524-CR







Bobbie O. Hutchinson, Appellant



v.



The State of Texas, Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 147TH JUDICIAL DISTRICT


NO. 0982740, HONORABLE FRED A. MOORE, JUDGE PRESIDING








 After finding appellant guilty of the offense of injury to a child, (1) the jury assessed
punishment at confinement for thirty years. Appellant asserts two points of error, contending that
the trial court erred by abusing its discretion in allowing a four-year-old child to testify, and in
admitting extraneous offense evidence. We will affirm.

 Verner Henderson and children Atlantic, age 10 or 11 months, Pacific, age two,
and Ocean, age three, were living with appellant in September 1997. Pacific was born with a
blood clot on his brain and was developmentally delayed. Doctors had advised Verner that a hard
fall could kill Pacific, a concern Verner had told appellant. At 2:00 p.m., on September 26, 1997,
appellant took Verner to her job at the Austin State School. Verner had bathed Pacific the night
before and did not notice any injuries to his body nor did she notice anything wrong with him
before she went to work. Atlantic and Pacific were taken to Verner's grandmother, Willie
Richardson, who took care of them until appellant picked them up at 8:30 p.m. Appellant picked
Verner up at work at work at 10:30 p.m. Despite the fact that Pacific was with appellant, it was
not until they returned home that Verner noticed that Pacific had "no life at all to him."

 Dr. David Anglin, medical director at Children's Hospital in Austin, testified that
Pacific was unconscious when he was admitted to the hospital on September 26, 1997, and that
he did not regain consciousness until two weeks later. The child was placed on life support and
surgery was necessary to relieve pressure on the brain resulting from injury to the child's head. 
X-rays also revealed injury to the "abdominal belly organs." Dr. Anglin found the injuries
consistent with an intentional act by someone. Dr. Anglin opined that the victim would "have a
very limited life in the sense of being any where close to a regular child of his age in terms of
development." Dr. Anglin further testified that the child could not have walked twenty feet after
receiving the injuries.

 Appellant told Verner that Pacific was ill when he picked him up after work. 
Appellant blamed the children's aunt, Carletta Richardson, for Pacific's injuries, stating that she
had spanked him while he was at his grandmother's house on the day in question. Richardson
denied having spanked Pacific, stating that she had fed him and that they watched television until
appellant picked the children up at 8:30 p.m. Joanne Goelsen testified that she saw someone that
resembled appellant leaving the Richardson house on the occasion in question. The person she
saw was carrying a baby and a boy two to three years old was walking with them. Verner testified
that she did not believe appellant was the person who injured Pacific

 Approximately two weeks prior to the occasion in question, Pacific sustained a big
bruise to the corner of his mouth. Appellant introduced the testimony of treating physicians that
Pacific had suffered injuries before he was hospitalized. Appellant told Verner that the bruise to
Pacific's mouth occurred when he fell through the railing of the stairs that was used as the outside
entrance to their apartment.

 Appellant's first point of error is based on the competency of Verner's son, Ocean,
age four (age three at time in question), to testify that he had seen appellant push the victim down
the stairs. Texas Rule of Evidence 601 governs the competency of witnesses to testify and
provides in pertinent part:


(a)  General Rule.  Every person is competent to be a witness except as otherwise
provided in these rules. The following witnesses shall be incompetent to testify in
any proceeding subject to these rules:


 . . . 


 (2)  Children.  Children or other persons who, after being examined by the
court, appear not to possess sufficient intellect to relate transactions with
respect to which they are interrogated.



 Outside the presence of the jury, Ocean responded to the trial court's questions about
his name, his age, his attendance at daycare, and his teacher's name. Ocean was able to recite the
alphabet correctly through the letter "H." Under further questioning by the trial court, Ocean
answered that it was good to tell the truth and if he told the teacher a lie he would "probably get in
time-out." Further questions showed that his answers were not consistent when he was questioned
about whether it was good or bad to tell a lie. Ocean correctly identified the color of a pencil as black
and told the trial court it would be a lie if he was told that it was red. In response to defense counsel's
question about whether it was his uncle Lloyd who pushed Pacific down the stairs, Ocean answered,
"Uh-huh."

 After the trial court found him competent to testify, Ocean testified in the presence of
the jury that he saw appellant push the victim down the stairs. However, he gave conflicting answers
about where he was when he observed the incident. Under cross-examination, Ocean said that Uncle
Lloyd was doing "nothing" at that time.

 In Rhea v. State, 705 S.W.2d 165, 170 (Tex. App.--Texarkana 1985, pet. ref'd), cited
by appellant, the witness, age three, was asked two questions concerning whether she would be
punished if she testified falsely. On both occasions the child answered, "No." The court of appeals
held that the child was not competent to testify, stating: "The obligation to tell the truth may take
many forms, but the child must recognize to tell the truth and know that some penalty attaches when
the truth is not told." Id.

 The issue of competence of a child witness is generally a question for the trial court and
its ruling will not be disturbed on appeal unless an abuse of discretion is shown. See Watson v. State,
596 S.W.2d 867, 871 (Tex. Crim. App. 1980). Conflicts or inconsistent answers in the testimony do
not automatically render a child incompetent; they simply affect the child's credibility. See Upton v.
State, 894 S.W.2d 426, 429 (Tex. App.--Amarillo 1995, pet. ref'd). A child is competent to testify
unless it appears to the court that the child does not possess sufficient intellect to relate the transaction
about which he will testify; the court must simply impress on his mind the duty of being truthful. See
Dufrene v. State, 853 S.W.2d 86, 88 (Tex. App.--Houston [14th Dist.] 1993, pet. ref'd).

 In reviewing all of Ocean's testimony, we hold that the trial court could properly find 
that the child possessed sufficient competence to recollect and narrate the events despite the fact that
he gave some conflicting and confusing answers. Being mindful that the trial court was in a position
to observe the demeanor of the child, we hold that the trial court did not abuse its discretion in finding
the witness competent to testify. Appellant's first point of error is overruled.

 In his second point of error, appellant contends the trial court erred in allowing
extraneous offense evidence that appellant had pushed the victim down the stairs several days before
the child was injured. Appellant's complaint is directed to the admission of Ocean's testimony that
he had seen appellant push Pacific down the stairs at a time prior to the time in question. Appellant
urges that Ocean's testimony fails "to make the existence of any fact that is of consequence to the
determination of the action more probable or less probable than it would be without the evidence" in
order to make the testimony relevant. Tex. R. Crim. Evid. 401. Assuming relevance, appellant
contends that the probative value is substantially outweighed by the danger of unfair prejudice. See
Tex. R. Crim. Evid. 403.

 Article 38.37, § 2 of the Texas Code of Criminal Procedure provides:


Notwithstanding Rules 404 and 405, Texas Rules of Criminal Evidence, evidence
of other crimes, wrongs, or acts committed by the defendant against the child who
is the victim of the alleged offense shall be admitted for its bearing on relevant
matters, including:


 (1)  the state of mind of the defendant and the child; and


 (2)  the previous and subsequent relationship between the defendant and the
child.


Article 38.37 makes the foregoing rule applicable to assaultive offenses against a child. See Tex.
Code Crim. Proc. Ann. art. 38.37, § 1(2) (West 1995); Ernst v. State, 971 S.W.2d 698, 700 (Tex.
App.--Austin 1998, no pet.).

 A helpful analysis of article 38.37 is found in Herasimchuk, Article 38.37: Using
extraneous acts as evidence in child victim cases. Among the more significant observations made by
the author was:  The rule is "strongly tipped in favor of admissibility for its bearing on any relevant
matter subject to Rule 403 analysis that shows its probative value is outweighed by the danger of
unfair prejudice." See Herasimchuk, Texas Prosecutor Special Issue 1995, at 14-16. In considering
the relevance of such evidence, the Herasimchuk article cited the 1951 Johns case for the rationale
in admitting extraneous offenses in this type of case:


 In Johns v. State, 155 Tex. Crim. 503, 236 S.W.2d 820, 823 (1951), the court
elaborated on its explanation that other acts of misconduct between the accused and the
child victim are relevant to show how a person in a position of authority, custody, or
care of a young child has developed an unnatural attitude and relationship toward that
child to explain the charged act--an act that would otherwise seem wholly illogical and
implausible to the average juror. Understandably most jurors are reluctant to believe
that parents or others in a parental position would commit sexual or physical crimes
against their own or other children. Such evidence not only shows that a peculiar
relationship exists, but also how and why the defendant achieved dominance over the
child.



Id. at 15.

 As long as the trial court's ruling was at least within the zone of reasonable
disagreement, the appellate court will not intercede in the trial court's determination of relevance in
the admission of extraneous acts. See Montgomery v. State, 810 S.W.2d 372, 391 (Tex. Crim. App.
1990). In the instant cause, we hold that the testimony of other physical conduct inflicted by appellant
was relevant to show appellant's state of mind and unnatural relationship between appellant and the
victim.

 In applying the balancing test of probative value versus substantial prejudice under Rule
403, the following factors are to be considered:


[H]ow great is the proponent's "need" for the extraneous transaction? This last inquiry
breaks down into three subparts: Does the proponent have other available evidence to
establish the fact of consequence that the extraneous misconduct is relevant to show? 
If so, how strong is that other evidence? And is the fact of consequence related to an
issue that is in dispute? When the proponent has other compelling or undisputed
evidence to establish the proposition or fact that the extraneous misconduct goes to
prove, the misconduct evidence will weigh far less than it otherwise might in the
probative-versus-prejudicial balance.



Montgomery, 810 S.W.2d 372 at 390.

 Appellant and Verner blamed other relatives. Ocean's version of Pacific's fall was
disputed. Under the circumstances, the State had a need to show appellant's prior conduct toward the
victim. We hold the probative value of the evidence of the extraneous act outweighed its prejudicial
effect, and that the evidence was admissible under article 38.37 and Rule 403. Appellant's second
point of error is overruled.


 The judgment is affirmed.



 

 Tom G. Davis, Justice

Before Justices Jones, Patterson and Davis*

Affirmed

Filed: May 13, 1999

Do Not Publish





















* Before Tom G. Davis, Judge (retired), Court of Criminal Appeals, sitting by assignment. See
Tex. Gov't Code Ann. § 74.003(b) (West 1998).
1. See Tex. Penal Code Ann. § 22.04 (West 1994 & Supp. 1999).



 In Johns v. State, 155 Tex. Crim. 503, 236 S.W.2d 820, 823 (1951), the court
elaborated on its explanation that other acts of misconduct between the accused and the
child victim are relevant to show how a person in a position of authority, custody, or
care of a young child has developed an unnatural attitude and relationship toward that
child to explain the charged act--an act that would otherwise seem wholly illogical and
implausible to the average juror. Understandably most jurors are reluctant to believe
that parents or others in a parental position would commit sexual or physical crimes
against their own or other children. Such evidence not only shows that a peculiar
relationship exists, but also how and why the defendant achieved dominance over the
child.



Id. at 15.

 As long as the trial court's ruling was at least within the zone of reasonable
disagreement, the appellate court will not intercede in the trial court's determination of relevance in
the admission of extraneous acts. See Montgomery v. State, 810 S.W.2d 372, 391 (Tex. Crim. App.
1990). In the instant cause, we hold that the testimony of other physical conduct inflicted by appellant
was relevant to show appellant's state of mind and unnatural relationship between appellant and the
victim.

 In applying the balancing test of probative value versus substantial prejudice under Rule
403, the following factors are to be considered:


[H]ow great is the proponent's "need" for the extraneous transaction? This last inquiry
breaks down into three subparts: Does the proponent have other available evidence to
establish the fact of consequence that the extraneous misconduct is relevant to show? 
If so, how strong is that other evidence? And is the fact of consequence related to an
iss