# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-03-00559-CR

**Rodgy Lee Nesby, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF BURNET COUNTY, 33RD JUDICIAL DISTRICT
### NO. 9322, HONORABLE GUILFORD L. JONES, III, JUDGE PRESIDING

### M E M O R A N D U M   O P I N I O N

A jury found Rodgy Lee Nesby guilty of aggravated sexual assault of a child and assessed punishment at ninety-nine years in prison. *See* Tex. Pen. Code Ann. § 22.021(a)(1)(B) (West Supp. 2004-05). Nesby complains that the district court erred by admitting testimony of the complaining witness and two other children about extraneous acts by appellant. We will affirm the judgment.

### BACKGROUND

Nesby was convicted for having sex with his longtime girlfriend's minor daughter, who was called "Marble Falls Number 118" during trial. (We will shorten this pseudonym to "MF-118" and will shorten other pseudonyms similarly.) He was convicted for an incident occurring on or about October 31, 2001. Only MF-118 testified about that incident, but she and her cousins, MF-

122 and MF-124, all testified about previous sexual activity involving Nesby, MF-118, and these other children. After Nesby's objection to testimony about extraneous acts involving other children, the court instructed the jurors that they could consider testimony about incidents concerning children other than MF-118 only if the jurors found beyond a reasonable doubt that Nesby committed the extraneous offense; the court also limited the jury's use of these extraneous offenses to such issues as plan, preparation, intent, opportunity, and identity of the victim and/or the accused in this case. On appeal, Nesby challenges the admission of this evidence.

Other evidence adduced at trial provides context for evaluating the district court's admission of the children's testimony. The State began its case with testimony from police investigators Larry Lamb and Melony Myers and the written statements Nesby gave them. In one statement, Nesby described MF-118 as disturbed, inappropriately sexual in behavior and dress, and vindictive. Nesby indicated that MF-118's accusations against him were motivated by anger that he would not let her move in with him and his new wife. In his second statement, Nesby said that MF-118 was sexually aggressive toward him and had touched his penis against his will numerous times. Nesby said that once, when his shoulder was injured, MF-118 and MF-124 came into his bedroom, held him down, and inserted his penis into MF-118's vagina. (Lamb testified that, at time of trial, MF-118 was about 5'1, 100 pounds, and that MF-124 was about 5'3, 120 pounds; the incident occurred more than two years before trial.) Nesby said that, when he did not maintain penetration, the girls laughed and compared him to an uncle with whom they had also had sex. The experience upset him and he moved out of the house. After the detectives testified, the State adduced evidence from various persons regarding how MF-118's accusations came to light. The State then called the children to the stand.

2

Before MF-122 testified, the court again instructed the jury regarding extraneous offenses. The court told jurors they could consider the other offenses only if they believed beyond a reasonable doubt that Nesby committed them. Even then, the court said, they could consider the other offenses only for the purpose of considering plan, preparation, intent, opportunity, and identity of the victim and/or the accused in this case. MF-122 testified that, when he was seven or eight years old, he and his siblings sometimes stayed with Nesby and MF-118 during the day. MF-122 testified that Nesby would tell MF-118 to "start doing stuff to his thing" and that Nesby would put "the sperm or whatever on her butt." MF-122 testified that Nesby then told him to simulate having sex with MF-118. MF-122 testified that this happened to him three or four times, eventually leading to him having sex with MF-118. On cross-examination, MF-122 admitted that he had previously denied that these events occurred, but he explained that he made the denials because he was shy and scared.

MF-124 testified that she was fourteen years old at the time of trial. She testified that, one summer when she was eleven years old, Nesby babysat several times for her, her brothers, MF-118 and MF-118's sisters. After the court gave the limiting instruction about extraneous offenses, MF-124 testified about a time that she and MF-118 were lying in bed watching television while wearing T-shirts and boxer shorts. Nesby came in and lay between them. He removed MF-118's underwear and began feeling her "bottom part" and her breasts under the T-shirt. He then had sex with MF-118, getting on top of her and penetrating her with his penis. MF-124 said she saw Nesby fondle and have sex with MF-118 about six or seven times over the next week or so. MF-124 said that MF-118 was twelve years old at the time of these acts.

MF-118 was fifteen at the time of trial. She testified that, when she was in first grade, Nesby began coming into her room and rubbing her vagina area over her panties, then under her panties. After she made these statements, Nesby objected and requested a limiting instruction; the court overruled his objection and request for a limiting instruction. MF-118 testified that Nesby first had sex with her when she was seven or eight years old and did so many times after that. Before she testified about events involving the other children, the court gave an instruction limiting the applicability of extraneous offenses to purposes of identification of the defendant, preparation, intent, and opportunity. MF-118 then recounted the incident during which MF-124 was present; her testimony matched MF-124's except that MF-118 testified that Nesby first tried to have sex with MF-124 before turning to MF-118. She confirmed that Nesby made MF-122 have sex with her. Finally, she testified about a time when Nesby had sex with her on the kitchen table when she was younger than fourteen years old. This last incident was the one for which Nesby was convicted.

MF-118 denied telling anyone that she had sex with her uncle or grandfather or telling any state authority that she had sex with anyone other than Nesby. She denied forcing Nesby to have sex with her. She admitted that she initially denied to Nesby's new wife that Nesby touched her inappropriately; MF-118 said she withheld that information in retaliation for the new wife's role in ending Nesby's relationship with MF-118's mother. MF-118 said she later decided to expose these activities to protect Nesby's daughters from Nesby.

## DISCUSSION

Nesby raises three issues on appeal concerning the court's admission of testimony by MF-118, MF-122, and MF-124 regarding extraneous offenses; because of the similarity of the issues,

4

Nesby argues these issues together. He contends that the evidence was unnecessary, and that the prejudicial effect of this evidence so far outweighs the probative value that the court abused its discretion by admitting it.

The State, as the proponent of this extraneous offense evidence, bears the burden of showing admissibility. *See Rankin v. State*, 974 S.W.2d 707, 719 (Tex. Crim. App. 1998) (op. on reh'g). Evidence is relevant and generally admissible if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tex. R. Evid. 401; *see also* Tex. R. Evid. 402. Evidence of other crimes or bad acts is not admissible to prove the defendant's character in order to show that the charged acts were in conformity with that character, but is admissible to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Tex. R. Evid. 404(b). Where the State's direct evidence that clearly shows an element of the crime is neither contradicted by the defendant nor undermined by cross-examination, evidence of other crimes to show the element is irrelevant. *See Rankin*, 974 S.W.2d at 719.

The legislature has determined that, notwithstanding rule 404, evidence of other crimes, wrongs, or acts committed by the defendant against a child victim shall be admitted for its bearing on relevant matters such as the state of mind of the defendant and the child and the relationship of the defendant and the child before and after the offense. *See* Tex. Code Crim. Proc. Ann. art. 38.37, § 2 (West Supp. 2004-05). This Court has held that evidence of extraneous sexual conduct with a child helps to prove that acts otherwise unthinkable to the average juror could occur, showing, for example, that a person in a position of authority, custody, or care of a young child has

5

developed an unnatural attitude and relationship toward that child. *Ernst v. State*, 971 S.W.2d 698, 700 (Tex. App.—Austin, 1998, no pet.); *see also Montgomery v. State*, 810 S.W.2d 372, 394 (Tex. Crim. App. 1990); *Johns v. State*, 236 S.W.2d 820, 823 (Tex. Crim. App. 1951). Evidence that is relevant under article 38.37 still is subject to exclusion if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, or needless presentation of cumulative evidence. Tex. R. Evid. 403; *Hitt v. State*, 53 S.W.3d 697, 706 (Tex. App.—Austin 2001, pet. ref'd).

We review the admission of evidence for an abuse of discretion. *Salazar v. State*, 38 S.W.3d 141, 153 (Tex. Crim. App. 2001); *Montgomery*, 810 S.W.2d at 378. Rulings on relevance should be left largely to the trial court, relying on its own observations and experience, and will not be reversed absent an abuse of discretion. *Moreno v. State*, 858 S.W.2d 453, 463 (Tex. Crim. App. 1993); *Corley v. State*, 987 S.W.2d 615, 618 (Tex. App.—Austin 1999, no pet.). If the trial court's ruling was within the "zone of reasonable disagreement," there is no abuse of discretion, and we must uphold the trial court's ruling. *Salazar*, 38 S.W.3d at 153-54; *Montgomery*, 810 S.W.2d at 391. To find an error in the admission of evidence, we must be able to "say with confidence that by no reasonable perception of common experience can it be concluded that proffered evidence has a tendency to make the existence of a fact of consequence more or less probable than it would otherwise be . . . ." *Montgomery*, 810 S.W.2d at 391. Upon finding such error, we must assess whether the error was harmful. *Id*.

Nesby argues that the extraneous-offense evidence was irrelevant because it was not necessary to prove elements of the offense that were essentially uncontested, such as identity, intent,

6

plan, preparation, and opportunity. Yet these elements had been called into question by Nesby's statements to police. In his initial statement to police, he denied having sex with MF-118 and accused her of making the accusations in retaliation for his refusal to allow her to move in with him and his wife. He then portrayed himself as the victim of sexual touching and harassment by MF-118 and of a particular sexual assault by the girls; he also alleged that MF-118 had sex with other relatives and accused others of sexual assault. These statements raised questions such as whether the assault charged occurred, occurred as MF-118 described (including whether Nesby was the relative who had sex with her and whether he intentionally or knowingly had sex with her), or was the creation of a vindictive child's mind.

The evidence was relevant under article 38.37 to show the relationship between Nesby and MF-118 and their respective states of mind. *See* Tex. Code Crim. Proc. Ann. art. 38.37, § 2. It was also relevant to show Nesby's intent in the encounter for which he was convicted. *See Montgomery*, 810 S.W.2d at 394. This is true both of evidence of incidents that involved only Nesby and MF-118 and of evidence of incidents that also involved other children. While the events that other children witnessed or participated in also may have involved crimes against them, MF-118 was present at and the focus of all the incidents testified about in this record.[1] The testimony about such events was thus within article 38.37 even though other children were present and, in some instances, involved in the extraneous act. The incidents involving other children cast light on the state of mind of Nesby and of MF-118, as well as their relationship.

---

[1] MF-118 testified that MF-124 rebuffed Nesby's attempts to fondle or have sex with her, but that testimony was vague about what actually occurred.

7

Nesby contends that the evidence of extraneous offenses was so unfairly prejudicial that it should not have been admitted. *See* Tex. R. Evid. 403. This jury was asked to determine whether Nesby committed one assault of MF-118, but heard evidence from multiple witnesses about multiple assaults involving more than one child. Nesby complains that evidence (and argument based thereon) that he coerced MF-122 to have sex with MF-118 in the presence of his sister, MF-124, would be extremely inflammatory and unfairly prejudicial to a jury concerned with a different assault on a different day involving only MF-118. He contends that the issues could become confused and the jury misled by the array of assaultive incidents in evidence when Nesby was charged with only one offense. The litany of extraneous events could also be unnecessarily cumulative.

But the trial court has discretion in weighing the concerns of unfair prejudice. *Mozon v. State*, 991 S.W.2d 841, 846-47 (Tex. Crim. App. 1999). Factors in the decision include:

(1) how compellingly the extraneous offense evidence serves to make a fact of consequence more or less probable—a factor which is related to the strength of the evidence presented by the proponent to show the defendant in fact committed the extraneous offense;

(2) the potential the other offense evidence has to impress the jury "in some irrational but nevertheless indelible way";

(3) the time the proponent will need to develop the evidence, during which the jury will be distracted from consideration of the indicted offense;

(4) the force of the proponent's need for this evidence to prove a fact of consequence, i.e., does the proponent have other probative evidence available to him to help establish this fact, and is this fact related to an issue in dispute.

*Id*. at 847; *see also Manning v. State*, 114 S.W.3d 922, 926 (Tex. Crim. App. 2003).

The testimony about the extraneous offenses was strong, and compellingly showed the nature of the relationship between Nesby and MF-118, their states of mind, and Nesby's identity, awareness, and intent. No other evidence illustrated these factors as well. The offender's intent or knowledge while committing the act is a critical fact in the offense of aggravated sexual assault of a child. *See* Tex. Pen. Code Ann. § 22.021(a)(1)(B).

The evidence of the extraneous offenses had great potential to impress the jury in an indelible way. The acts described were repugnant. But the repugnance evoked is irrational only if it distracted the jurors from the offense charged and impelled them to convict Nesby based on actions other than the one for which he was charged.

The relative amount of time spent on the extraneous offenses had some potential to distract the jurors from the single event for which Nesby was charged. As Nesby notes, testimony about the charged event occupied some twenty lines of text on one page in a guilt-innocence phase reporter's record that covers about 400 pages. But the imbalance is not that extreme. The testimony from the three child witnesses occupied less than sixty pages, and many of those pages did not concern extraneous offenses.

Finally, the State needed the extraneous offense evidence to support its case against Nesby. The determination of Nesby's guilt or innocence hinged on the State's ability to persuade jurors that he intentionally or knowingly had sex with MF-118. His intent was a critical issue in dispute. Without the evidence of extraneous offenses, the State had only the testimony from MF-118 about the incident in the kitchen. This was balanced with evidence that MF-118 lied and felt motivated to harm Nesby. The evidence of extraneous offenses—particularly that from the other

9

child witnesses—was compelling corroboration of MF-118's version of her relationship with Nesby and of his intentions toward her.

We conclude that the district court did not abuse its discretion by admitting the testimony from MF-118, MF-122, and MF-124 regarding extraneous acts committed by Nesby against MF-118.

## CONCLUSION

Concluding that the district court did not abuse its discretion in admitting this evidence, we affirm the judgment.

_____

David Puryear, Justice

Before Justices B. A. Smith, Puryear and Pemberton

Affirmed

Filed:   March 24, 2005

Do Not Publish