Affirmed and Memorandum Opinion filed May 17, 2005









Affirmed and Memorandum Opinion
filed May 17, 2005.

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NOS. 14-03-01223-CR

          14-03-01224-CR

          14-03-01225-CR

____________

 

MARK ANTHONY COMEAUX, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

__________________________________________________

 

On Appeal from the 248th District Court

Harris County, Texas

Trial Court Cause Nos. 948,221; 948,222; & 962,578

__________________________________________________

 

M E M O R A N D U M   O P I N I O N








Appellant Mark Anthony Comeaux
was indicted on three separate charges of aggravated sexual assault of a child.[1]  A jury found him guilty of all three charges
and assessed punishment for each charge at sixty-five years=
confinement in the Texas Department of Criminal Justice, Institutional
Division, and a $500 fine.  The trial
court sentenced appellant accordingly and denied the State=s motion
to cumulate the sentences.  In two
issues, appellant challenges the admission of (1) extraneous offense evidence
and (2) expert testimony on common symptoms and behaviors of child sexual abuse
victims.  We affirm.

I.  Factual and
Procedural Background

Appellant was accused of three
counts of aggravated sexual assault of his minor stepdaughter, K.S.  Two of the charges involved vaginal
intercourse, and one involved oral contact. 
Before trial, the State gave notice of its intent to offer extraneous
offense evidence, which included appellant=s having Arequested
and commanded@ J.W., a person younger than
seventeen years of age, to engage in sexual intercourse with K.S. shortly
before the first sexual assault alleged in the present case.  After the State completed its voir dire
examination, appellant requested that the prosecutor not be permitted to
question K.S. about this offense. 
Appellant further objected that the prejudicial effect of the evidence
outweighed its probative value.  The
trial court overruled the objection and ruled the evidence would be admitted.

The next day, before the State
opened, appellant objected to J.W.=s
testimony on the grounds that it was being offered to show appellant=s
criminal nature and its prejudicial effect outweighed its probative value.  The trial court indicated the record was
clear from appellant=s earlier
objection that appellant was objecting to J.W.=s
testimony in its entirety and granted appellant a running objection except for
matters of form.  Appellant also objected
to the testimony of Lawrence Henderson, J.W.=s uncle,
who would corroborate some of the details of J.W.=s
account.  The trial court overruled the
objection.








Henderson testified that one day
in February 2003, J.W., Henderson=s
fourteen-year-old nephew, was helping at Henderson=s scrap
metal business.  Appellant, whom
Henderson knew as the pastor of a church next to the shop, came over around
7:30 a.m. and asked whether J.W. could help appellant move some televisions at
appellant=s house. According to Henderson,
J.W. went with appellant and returned forty-five minutes or an hour later.

J.W. testified he knew appellant
as the pastor of the church he attended. 
One weekday in February 2003, when there was no school, at appellant=s
request, he went to appellant=s house
to help move televisions.  When they
arrived at appellant=s house,
about ten minutes away by car, appellant told J.W. the real reason he was there
was because appellant=s
stepdaughter had told him she wanted to experience sex and appellant wanted
J.W. Ato be the
one to do it.@ 
According to J.W., appellant gave him a condom and went to get K.S. from
her school.[2]  After K.S. arrived, she and J.W. eventually
went upstairs to her bedroom.  They
talked for a while, and J.W. told K.S. he did not want to have sexual
intercourse with her.  Although J.W.
could have walked away, he was scared appellant might do something to him if he
did not have sexual intercourse with K.S. 
J.W. testified that, after he had sexual intercourse with K.S.,
appellant drove him back to his uncle=s
shop.  On the way back, appellant asked
J.W. if he had done it.  Appellant gave
J.W. $20, and told him not to tell anyone about the incident.








K.S. testified that, about a week
before her thirteenth birthday, in February 2003, appellant came to her school,
checked her out early, told her he had a surprise for her, and took her
home.  When she arrived home, she saw
J.W. there.  Because of questions
appellant had asked her a week or two before, K.S. Akind of@ knew
what was going to happen.  She and J.W.
went upstairs to her room and talked for a while.  According to K.S., appellant came in the room
at some point and said, AY=all know
what y=all got
to do.  Y=all
better hurry up.  I don=t have
all day.@  K.S. indicated she did not want to, but
appellant responded if she did not, she was going to regret it.  According to K.S., after she and J.W. had
sexual intercourse, appellant entered the bedroom, removed the bedcovers,
pushed K.S.=s legs apart and took a
photograph.[3]  After J.W. went downstairs, appellant called
K.S. into appellant=s
room.  Appellant told her he wanted her
to experience everything, pushed her down on the bed, and licked her between
the legs.  Appellant then took J.W. back
to the shop.

According to K.S., between the
incident with J.W. and K.S.=s March
6, 2003 birthday, appellant had sexual intercourse with K.S. Atwo,
maybe three@ times.  On March 6, appellant called K.S. into his
room.  When she started crying, he told
her this was her Abirthday
surprise.@  
He then licked her between her legs and penetrated her vagina with his
penis.  K.S. also testified about another
specific incident around the end of April 2003, when appellant again called her
into his bedroom and licked her between her legs and penetrated her.  Although something like this would happen two
or three times a week, K.S. did not say anything until shortly after the April
2003 incident, when she told her best friend and people at her school.  She did not tell her mother when this first
started happening because she was scared appellant might hurt her mother or her
sisters.








The State also presented
testimony from Allen Glass, Dr. Sheela Lahoti, Officer Kelly Wallace, and Dr.
Judy Rambur.  Glass, K.S.=s school
counselor, testified about changes he observed in K.S.=s
behavior from January 2003 to April 2003. 
Dr. Lahoti, a University of Texas pediatrician, testified about her
examination of K.S. at the Children=s
Assessment Center Clinic and the injury she observed on K.S.=s
hymen.  Dr. Lahoti testified, without
objection, that K.S. told her, AMy dad,
my stepdad, first he made me do it with this boy and then he molested me.@  Wallace, a Houston Police Department juvenile
sex crimes investigator, testified briefly about the investigation of K.S.=s
allegations.  Finally, over appellant=s
objection, Rambur, a clinical psychologist, testified in general about the
behaviors or symptoms commonly seen in sexually abused children and about
sexual predators= Agrooming@ of
potential victims.

Appellant testified in his own
defense.  He denied paying J.W. to have
sexual intercourse with K.S. and denied having any type of sexual contact with
K.S.  He contended K.S. was fabricating
these allegations because appellant discovered she was being tardy for
class.  Appellant=s
common-law wife, K.S.=s mother,
also testified for the defense.  In
closing, appellant=s counsel
implied the injury to K.S.=s hymen
was caused by the sexual intercourse with J.W., arguing J.W. was Athe only
person we know that [K.S.] really had sex with . . . because [J.W.] said they
had sex together.  There was no physical
evidence whatsoever that [appellant] had any type of sex with [K.S.].@

II.  Issues
Presented and Standard of Review








In two issues, appellant
challenges the trial court=s
decision to admit evidence of (1) appellant=s
solicitation of a juvenile to have sexual intercourse with K.S. before the
sexual abuse alleged in the present cases, and (2) expert testimony describing
common symptoms and behaviors of child sexual abuse victims.  We review a trial court=s
decision to admit or exclude evidence for an abuse of discretion.  Mozon v. State, 991 S.W.2d 841, 846B47 (Tex.
Crim. App. 1999).  An appellate court
applies this standard to the admission of other crimes evidence under Texas
Code of Criminal Procedure article 38.37 and Texas Rule of Evidence 403 and to
the determination of the relevance of expert testimony under Texas Rule of
Evidence 702.  See Jones v. State,
119 S.W.3d 412, 420B22 (Tex.
App.CFort
Worth 2003, no pet.) (applying abuse-of-discretion standard in determining
admissibility under Article 38.37 and Texas Rule of Evidence 403); Trimboli
v. State, 817 S.W.2d 785, 792 (Tex. App.CWaco
1991) (holding, under relevancy test of Texas Rules of Evidence 401, 402, and
702, no abuse of discretion in denying motion to exclude expert testimony), aff=d, 826
S.W.2d 953 (Tex. Crim. App. 1992); see also Kelly v. State, 824
S.W.2d 568, 575 n.2 (Tex. Crim. App. 1992) (Clinton, J., concurring) (stating
whether proffered evidence of specialized knowledge will add to the jury=s
comprehension is a matter of trial court=s
discretion).

In determining whether the trial
court abused its discretion, we consider whether the court acted without
reference to guiding rules and principlesCthat is,
whether the court acted arbitrarily or unreasonably.  Lyles v. State, 850 S.W.2d 497, 502
(Tex. Crim. App. 1993).  We must uphold
the trial court=s ruling
so long as it is Awithin
the zone of reasonable disagreement.@  Wheeler v. State, 67 S.W.3d 879, 888
(Tex. Crim. App. 2002).

                                                                III.  Analysis

A.        Did the trial court err in admitting
evidence regarding appellant=s solicitation of a
juvenile to engage in sexual intercourse with K.S.?

In his first issue, appellant
contends the trial court Areversibly erred@ when it
admitted evidence that appellant had committed the extraneous offense of
criminal solicitation of a minor by allegedly instigating an aggravated sexual
assault of K.S. by J.W. before appellant committed the offenses for which he
was on trial.[4]  Appellant contends the evidence was
inadmissible under Texas Rule of Evidence 404(b).

                 Admissibility Under Texas Code
of Criminal Procedure Article 38.37

The offenses in these cases were
sexual assaults against a victim under seventeen years of age.  For such cases, Texas Code of Criminal
Procedure article 38.37 provides:








Notwithstanding Rules 404
and 405, Texas Rules of Criminal Evidence, evidence of other crimes, wrongs, or
acts committed by the defendant against the child who is the victim of the
alleged offense shall be admitted for its bearing on relevant matters,
including:

 

(1)       the state of mind of the defendant and
the child;  and

(2)       the previous and subsequent relationship
between the defendant and the child.

 

Tex. Code Crim.
Proc. Ann. art. 38.37, sec. 2 (Vernon 2005). 
In cases in which it applies, this provision supersedes Texas Rule of
Evidence 404.  See DeLeon v. State,
77 S.W.3d 300, 311 n.5 (Tex. App.CAustin
2001, pet. ref=d); Hinds v. State, 970
S.W.2d 33, 35 (Tex. App.CDallas
1998, no pet.).[5]

In the present case, there was
evidence K.S. bled when she had sexual intercourse with J.W., but did not bleed
after that time, thus suggesting K.S. was sexually inexperienced before the
incidents with J.W. and appellant.  Appellant
photographed K.S. immediately after K.S. had sexual intercourse with J.W. and
did not begin abusing K.S. until after that encounter.








The State argued to the jury that
appellant arranged for J.W. to have sexual intercourse with K.S. because
appellant planned to be having sex with her and A[h]e
needed to have something to protect him so that if there was medical evidence,
like there was, he=d have
somebody to blame it on.@  The trial court instructed the jury they
could use any evidence of appellant=s Acommitting
other crimes, wrongs, or acts against the child who is the victim of the alleged
offense . . . only . . . in determining its bearing on relevant matters,
including:  (1) the state of mind of the
defendant and the child; and (2) the previous and subsequent relationship
between the defendant and the child, and for no other purpose.@

The present case compares more
than favorably with two cases in which appellate courts upheld the admission of
extraneous offense evidence.  In Jones
v. State, the defendant was charged with indecency with a child based on
his having touched her in her vaginal area. 119 S.W.3d at 416B17.  During its case in chief, the State
introduced evidence which included the defendant=s having
(1) previously paid money to the victim and other underage girls to remove part
or all of their swimsuits, (2) provided alcohol to the victim and other
underage girls, (3) offered underage girls money to run naked down the beach,
and (4) attempted to untie the swimsuits of the victim and her friends.  Id. at 417.  The State contended the evidence was
admissible under article 38.37 because it had a bearing on relevant matters,
including the defendant=s and the
victim=s states
of mind and the previous relationship between them.  Id. at 420.  The defendant agreed the evidence showing his
conduct with the victim was relevant; but he disputed, under article 38.37, the
relevance of the evidence of his conduct with the other girls.  Id. 
He contended these acts had very little, if any, relevance regarding
whether he was indecent with the victim of the charged offense and only tended
to establish he acted in conformity with his bad character.  Id. 
The appellate court disagreed, reasoning:








Here, it would have been
extremely difficult for the girls who testified to separate [the defendant=s] actions toward [the
victim of the charged offense] from his actions toward them because his actions
and words were directed at all the girls simultaneously.  Even if the girls could have somehow
distinguished [the defendant=s] conduct toward the group from [the defendant=s] conduct specifically
toward [the victim], this distinction would have given the jury an inaccurate
picture of [the defendant=s] relationship with [the
victim].  Accord Wyatt v. State,
23 S.W.3d 18, 25 (Tex. Crim. App. 2000) (indicating jury is entitled to know
all relevant surrounding facts and circumstances of charged offense).  [The defendant=s] prior relationship with
[the victim] was developed through group activities that included [the other
girls].  Their testimony was relevant to
give an accurate picture of [the defendant=s] prior relationship with
[the victim].  Moreover, the trial court=s charge instructed the
jury that it could consider these acts only in determining the state of mind of
[the defendant] and [the victim] and the previous or subsequent relationship
between [the defendant] and [the victim]. 
We hold that the trial court did not abuse its discretion by determining
that the extraneous offenses involving [the victim] were relevant under article
38.37 to prove the charged offense.

 

Id.

Just as the defendant in Jones
developed a prior relationship with the victim through activities that included
other parties, appellant developed his prior relationship with K.S. through an
activity involving a third party, i.e., by soliciting J.W. to have
sexual intercourse with K.S.  The
testimony about the incident with J.W. was relevant to give an accurate picture
of appellant=s prior relationship with
K.S.  And, as in Jones, the trial
court instructed the jury that it could use evidence of appellant=s having
other crimes or bad acts against the victim only in determining state of mind
and the previous or subsequent relationship between appellant and K.S.

In McCulloch v. State, the
defendant was charged with the aggravated sexual assault of his eight-year-old
stepdaughter.  39 S.W.3d 678, 679 (Tex.
App.CBeaumont
2001, pet. ref=d).  Pursuant to article 38.37, the State offered
evidence of other sexual assaults the defendant allegedly committed against his
stepdaughter both before and after the charged assault.  Id. at 680.  According to the stepdaughter, the defendant
would take her into her bedroom on the pretense of disciplining her, and while
there, sexually assault her.  He would
then talk to her or spank her to make her cry so her mother would think he was
disciplining her.  Id.  The defendant told his stepdaughter any
disclosure would hurt her mother and her brothers and would break up the
family.  Id.  On appeal, the defendant argued the testimony
was not relevant under article 38.37. 
The appellate court disagreed, explaining:








The testimony concerning
the prior and subsequent Aacts@ is relevant to [the
stepdaughter]=s and [the defendant]=s state of mind.  [The stepdaughter]=s account of the Aacts@ reveals [the defendant]=s dominance over her and
her fear of him.  The evidence also shows
[the defendant]=s Anecessary intent and
ability@ to commit the offense and
further demonstrates that [the stepdaughter] was Acompelled to acquiesce.@  See Poole v. State, 974 S.W.2d 892,
898 (Tex. App.CAustin 1998, pet. ref=d).  The prior and subsequent Aacts@ reveal the nature of
their relationship both before and after the charged offense.  See Ernst v. State, 971 S.W.2d 698,
700B701 (Tex. App.CAustin 1998, no
pet.).  In the absence of evidence of how
the step‑father misused his position of authority as the disciplinarian
in the family to create an unnatural relationship, the jury may have been led
to believe it Aillogical and implausible@ that the charged act
could have occurred.  Id. (quoting
Johns v. State, 155 Tex. Crim. 503, 236 S.W.2d 820, 823 (1951)).  The evidence not only explained how the step‑father
was able to commit the assault without being apprehended for nine years, an
issue in dispute at trial, but it also explained to the jury that the single
charged offense simply did not occur in an otherwise healthy relationship.  If the jurors were not told of the pattern of
sexual assault, they may well have been persuaded that the absence of such
evidence was proof that the one assault did not occur in this step‑father
and child relationship.  Whether the jury
believed the evidence we do not know; 
but we cannot say the evidence was irrelevant under article 38.37 to the
charged offense.

 

Id. at 681.

As in McCulloch, the
evidence of the J.W. incident showed appellant=s
necessary intent and ability to commit the charged offenses.  Evidence of the J.W. incident showed how K.S.
was gradually compelled to acquiesce in appellant=s sexual
assault of her.  Finally, evidence of the
J.W. incident showed the charged offenses did not occur in an otherwise healthy
relationship.  Just as the Aacts@ evidence
was admissible under article 38.37 in McCulloch, it was admissible under
article 38.37 in the present case.

Probative Value in Relation to Potential for Unfair Prejudice








Appellant also contends, as he
did in the trial court, that the evidence was inadmissible under Texas Rule of
Evidence 403 because the danger of unfair prejudice substantially outweighed
the evidence=s probative value.  See Tex.
R. Evid. 403.  When evidence of a
defendant=s extraneous acts is relevant
under article 38.37, the trial court is still required to conduct a Rule 403
balancing test if the defendant makes a proper objection.  Poole v. State, 974 S.W.2d 892, 897
(Tex. App.CAustin 1998, no pet.).[6]

Because Rule 403 favors admissibility
of relevant evidence, the presumption is that relevant evidence will be more
probative than prejudicial.  See
Montgomery v. State, 810 S.W.2d 372, 389 (Tex. Crim. App. 1990) (op. on reh=g).  The Court of Criminal Appeals has listed the
following factors for a trial court to consider in conducting a Rule 403
balancing test:  

(1)       the probative value of the evidence;

(2)       the potential of the evidence to impress
the jury in some irrational, but nevertheless indelible way;

(3)       the time the proponent needs to develop
the evidence; and 

(4)       the proponent=s need for the
evidence.  

 

McCulloch, 39 S.W.3d at 681 (citing
Wyatt v. State, 23 S.W.3d 18, 26 (Tex. Crim. App. 2000)); see also
Jones, 119 S.W.3d at 422 (citing Mozon v. State, 991 S.W.2d 841, 847
(Tex. Crim. App. 1999)).








As discussed above, the J.W.
incident was probative because it demonstrated the relationship between K.S.
and appellant and provided a context for the jury to understand how appellant
led up to compelling K.S. to acquiesce in his sexual assaults of her.  The incident showed that, by arranging for
K.S. to lose her virginity with J.W., appellant could subsequently violate K.S.
more easily, both mentally and physically, and would have an explanation for
her sexual injury.  Moreover, the
strength of the evidence connecting appellant with the J.W. incident is a
consideration supporting the probative value of the evidence.  See Jones, 119 S.W.3d at 423.

Although the incident with J.W.
undoubtedly carried some emotional weight, it was different from, and less
heinous than, appellant=s
repeated sexual assaults of K.S.  The
incident, therefore, was not likely to create such prejudice in the minds of
the jurors that they would have been unable to limit their consideration of the
evidence to its proper purpose.  See
Jones, 119 S.W.3d at 423 (citing Taylor v. State, 920 S.W.2d 319,
323 (Tex. Crim. App. 1996)).  In addition,
the trial court gave a limiting instruction, and such an instruction minimized
any impermissible inference of character conformity.  See Lane v. State, 933 S.W.2d 504, 507
(Tex. Crim. App. 1996).

The amount of time devoted to the
J.W. incident weighs to some extent against its introduction.  The State required the testimony of three
witnessesCHenderson, J.W., and K.S.Cto
develop the incident.  Nevertheless, most
of this testimony described the events leading up to and following the act of
sexual intercourse itself.  Given the
other factors weighing in favor of admissibility, this factor is not
dispositive.

Finally, the State needed the
evidence.  Appellant denied having any
type of sexual contact with K.S. and contended K.S. was fabricating the
allegations against him because appellant discovered K.S. was being tardy for
class.  Appellant was K.S.=s
stepfather.  Whether the offense was
believable depended, in part, on the context of the offense in the relationship
between appellant and K.S.  See
McCulloch, 39 S.W.3d at 682.

We conclude the trial court did
not abuse its discretion in admitting evidence of appellant=s having
solicited J.W. to have sexual intercourse with K.S.  We overrule appellant=s first
issue.








B.        Did the trial court abuse its discretion by admitting
Dr. Judy Rambur=s expert testimony on the common symptoms and
behaviors of child sexual abuse victims?

 

In
his second issue, appellant contends the trial court Areversibly erred@ by admitting Dr. Judy Rambur=s testimony on the common symptoms
and behaviors exhibited by child victims of sexual abuse.  Appellant contends the evidence was not
admissible under Texas Rule of Evidence 702, regarding expert testimony,
because Dr. Rambur did not tie pertinent facts of the case to the scientific or
expert principles that were the subject of her testimony.  Appellant contends the expert opinion did not
sufficiently Afit@ the facts of the case.

To
preserve error, the complaint on appeal must comport with the objection lodged
in the trial court.  Long v. State,
130 S.W.3d 419, 429 (Tex. AppCHouston [14th Dist.] 2004, no pet.); see Tex. R. App. P. 33.1(a).  Appellant=s objection in the trial court
consisted of the following:  

AI=d say it=s
irrelevant.  This doctor has never
treated or consoled or counseled the victim in this case, [K.S.].  She=s not a
treating physician of hers.  It will all
be hearsay, whatever she=s going to say. 
It=s not relevant to any part of the guilt/innocence of
this case.@

 

Lack of relevance
based on the expert=s not having examined the victim is not the same as lack of
relevance based on a lack of a sufficient Afit@ with the facts of the case.  Assuming, however, appellant=s objection was sufficient to apprise
the trial court and the State of the nature of appellant=s complaint[7],
appellant still does not prevail on the merits of his complaint.








Texas
Rule of Evidence 702 provides: AIf scientific, technical, or other specialized knowledge will
assist the trier of fact to understand the evidence or to determine a fact in
issue, a witness qualified as an expert by knowledge, skill, experience, training,
or education may testify thereto in the form of an opinion or otherwise.@ 
Tex. R. Evid. 702.  Evidence admissible under Rule 702 may
include testimony comparing general or classic behavioral characteristics of a
certain type of victim with the specific victim=s behavior patterns.  Scugoza v. State, 949 S.W.2d 360, 363
(Tex. App.CSan Antonio 1997, no pet.) (citing Fielder
v. State, 756 S.W.2d 309, 321 (Tex. Crim. App. 1988)).

The
Court of Criminal Appeals has indicated the preferred practice is Anot to have a non‑diagnostic
expert personally examine an alleged child abuse victim, lest [her] testimony
become tainted by personal reference to the credibility of the child victim=s claims.@ 
Duckett, 797 S.W.2d at 906 n.18; see also Perez v.
State, 113 S.W.3d 819, 831B35 (Tex. App.CAustin 2003, pet. ref=d) (upholding admission of testimony
from non-examining expert under Nenno v. State, 970 S.W.2d 549, 561
(Tex. Crim. App. 1998), overruled on other grounds by State v. Terrazas,
4 S.W.3d 720 (Tex. Crim. App. 1999)). 
Nevertheless, for the expert=s testimony to be relevant, the
testimony must be A>sufficiently tied to the facts to
meet the simple requirement that it be Ahelpful@ to the jury.=@ 
Morales v. State, 32 S.W.3d 862, 865 (Tex. Crim. App. 2000)
(quoting Jordan v. State, 928 S.W.2d 550, 555 (Tex. Crim. App. 1996)).

In
the present case, Dr. Rambur testified she never examined K.S. and had no
personal knowledge of her.  Dr. Rambur
discussed Agrooming@ and explained that children may not
question authority figures when asked to do something of a sexual nature.  She indicated that withdrawal from family and
friends may occur after sexual abuse and that a sexually abused child may
experience shame, guilt, and ambivalence toward the perpetrator.  According to Dr. Rambur, children are not
likely to disclose right after the abuse has occurred,  and a child=s feeling she will not be believed
may be a factor in whether the child feels she can disclose the abuse.  Increases in sleep and eating problems and
nightmares are common.








K.S.
testified she Ahad sex@ with J.W. at appellant=s instruction even though she did not
want to do so.  Although appellant began
sexually abusing K.S. in late February or early March 2003, and sometimes
abused her two or three times a week, K.S. did not disclose the abuse until the
end of April 2003.  From January 2003 to
April 2003, K.S.=s school counselor noticed a marked change in K.S.=s behavior, including avoidance,
which was unusual because K.S. was very outgoing.  K.S. testified she always had Aan attitude@ toward appellant, but it got worse
after the sexual abuse.  She testified
that, sometimes at night, she would dream about the sexual abuse or just be
awake thinking about it.

Dr.
Rambur=s testimony was tied to the facts of
the case.  The trial court did not abuse
its discretion in admitting this testimony. 
We overrule appellant=s second issue.

Having
overruled appellant=s two issues, we affirm the judgment of the trial court.

 

/s/        Kem Thompson Frost

Justice

 

Judgment rendered
and Memorandum Opinion filed May 17, 2005.

Panel consists of
Justices Anderson, Hudson, and Frost.

Do Not Publish C Tex.
R. App. P. 47.2(b).

 

 











[1]  In trial court
cause number 948,221, appellant was charged with penetrating K.S.=s sexual organ with his sexual organ on March 6, 2003;
in trial court cause number 962,578, appellant was charged with causing K.S.=s sexual organ to contact his mouth on March 6, 2003;
and in trial court cause number 948,222, appellant was charged with penetrating
K.S.=s sexual organ with his sexual organ on April 23,
2003.





[2]  J.W. and K.S.
did not attend the same school.  J.W.
thought he did not have school that day because of a teacher preparation day.





[3]  The photograph
was never found.  J.W. testified
appellant never came into the room to see whether they had Adone it.@





[4]  The State
contends appellant waived this point because, although the trial court
overruled his objections to K.S.=s and
Henderson=s testimony, the trial court did not rule on appellant=s objection to J.W.=s
testimony regarding the same incident. 
In support, the State cites Texas Rule of Appellate Procedure 33.1(a)
(1) and (2).  Under that rule, error is
preserved if the trial court rules on the objection Aeither expressly or implicitly.@  Tex. R. App. P. 33.1(a)(2)(A).  The record is clear that, in permitting J.W.=s testimony, the trial court implicitly overruled
appellant=s objection.





[5]  AOn timely request by the defendant, the state shall
give the defendant notice of the state=s intent
to introduce in the case in chief evidence described by Section 2 in the same
manner as the state is required to give notice under Rule 404(b), Texas Rules
of Criminal Evidence.@  Tex. Code
Crim. Proc. Ann. art.
38.37, sec. 3 (Vernon 2005).  In its notice of intent to use extraneous
offense evidence, the State did not refer to Texas Code of Criminal Procedure
article 38.37, but did refer to Texas Rule of Evidence 404.  See McCoy v. State, 10 S.W.3d 50, 53B54 (Tex. App.CAmarillo
1999, no pet.) (observing defendant made no request for notice of extraneous
offense evidence under article 38.37, and no notice given by the State
specified notice was given to comply with article 38.37, but further observing
the State did give notice of intent to use evidence of other acts in response
to a Rule 404(b) request).  Appellant
does not complain of the adequacy of the State=s
notice.





[6]  In a sentence
appellant complains Athere is nothing in the record to indicate that the
trial court engaged in the required balancing of the probativeness and
prejudice of the extraneous offense under Rule 403.@  The trial
court heard appellant=s Rule 403 objection and ruled the evidence was
admissible.  In overruling appellant=s objection, the trial court is assumed to have
applied a Rule 403 balancing test and determined the evidence was
admissible.  Hinojosa v. State,
995 S.W.2d 955, 957 (Tex. App.CHouston [14th Dist.] 1999, no pet.).





[7]  See Ex
parte Little, 887 S.W.2d 62, 65 (Tex. Crim. App. 1994) (stating objection
may be phrased in any manner which sufficiently apprises trial court and
opposing counsel of nature of the complaint).